UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| HENRY K. HART<br>CARRIE F. HART | 04-00491-5-ATS |
|     DEBTORS | |
| CARRIE F. HART | |
|     Plaintiff | ADVERSARY PROCEEDING NO. |
| v. | S-05-00079-5-AP |
| HARNETT COUNTY DEPARTMENT OF<br>SOCIAL SERVICES and STATE OF<br>NORTH CAROLINA | |
|     Defendants. | |

MEMORANDUM OPINION

The trial of this adversary proceeding to determine whether, pursuant to 11 U.S.C. § 524(a), the Harnett County Department of Social Services ("Harnett County DSS") and the State of North Carolina should be enjoined from prosecuting the debtor, Carrie F. Hart, for alleged food stamp and Medicaid fraud was held in Raleigh, North Carolina on August 25, 2005.

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on

August 3, 1984.  This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

Henry K. Hart and Carrie F. Hart filed a petition for relief under chapter 7 of the Bankruptcy Code on February 9, 2004.  Ms. Hart scheduled the Harnett County DSS as an unsecured creditor for alleged overpayment of Medicaid benefits and food stamps in the amount of $36,405.65.  Harnett County DSS did not participate in the bankruptcy case, and Ms. Hart received her discharge on May 14, 2004.  On September 3, 2004, an arrest warrant was issued against Ms. Hart for food stamp and Medicaid fraud.  Ms. Hart brought the instant adversary proceeding to enjoin the criminal prosecution, contending that the prosecution was an effort to collect a discharged debt in violation of 11 U.S.C. § 524(a).

Kiki Turner, an investigator with the fraud unit of the Harnett County DSS, testified that she initially interviewed Ms. Hart on June 10, 2003, after a referral from a Medicaid worker that there was reason to believe that Ms. Hart's husband was employed and living in the home.[1]  At the interview, Ms. Turner told Ms. Hart that she would review all of her case files (dating back to 1998) to determine whether Ms. Hart ever reported that Mr. Hart was living in the home and then moved out.  If

---

[1] To qualify for Medicaid benefits, Ms. Hart would have to show that her husband was not living in the home.  To qualify for food stamps, she would also have to show that there were children under the age of 19 living in the home.

2

it was determined that Mr. Hart was living in the home, the DSS would reconsider whether Ms. Hart was eligible for the benefits, and Ms. Hart would be responsible for repaying any overpayment.  Ms. Turner also indicated that the DSS might consider criminal prosecution for welfare fraud.

Ms. Turner completed her investigation and determined that overpayments had been made.  She wrote a letter to the Harnett County District Attorney on October 20, 2003, setting forth the factual allegations against Ms. Hart and inquiring whether criminal prosecution was appropriate.  By letter of February 10, 2004, the District Attorney requested Ms. Turner to charge Ms. Hart with one count of food stamp fraud and one count of Medicaid fraud for each period that Ms. Hart misrepresented her situation.  Ms. Turner then prepared the warrants, which were issued in September 2004.

This court discussed the initiation of criminal prosecutions with respect to the automatic stay and/or discharge injunction in In re Byrd, 256 B.R. 246 (Bankr. E.D.N.C. 2000).  In Byrd, the court held that

> a state may initiate or continue criminal prosecutions regardless of the pendency of a bankruptcy case, and . . . it may do so even when the state's--or a complaining witness's--primary purpose is the collection of a debt. However, a creditor does not have the full protection of § 362(b)(1), and an entity other than the government's prosecuting authority may not commence a criminal action for the primary purpose of recovering a debt that is dischargeable in bankruptcy.  If a creditor already has brought its grievance to the attention of law enforcement

3

>officials prior to the debtor's bankruptcy filing, those officials may proceed as they deem appropriate and may elect to prosecute, or not.

Byrd, 256 B.R. at 251.

In this case, the Harnett County DSS notified the District Attorney of Ms. Hart's alleged food stamp and Medicaid fraud in October 2003, well before Ms. Hart filed her bankruptcy petition.  The District Attorney directed the DSS to issue warrants by letter of February 10, 2004.  Ms. Turner testified that the District Attorney, not the creditor/DSS, makes the decision whether the warrants are to be issued and the case is to be prosecuted.  Based on that information, it appears to the court that the creditor brought its grievance to the attention of law enforcement officials prior to the debtor's bankruptcy filing, and the officials then elected to prosecute the alleged criminal acts.

Ms. Hart also contends that the DSS's choice to prosecute her when it also had a civil remedy reflects that Ms. Hart is being punished for exercising her right to file bankruptcy and discharge her debts.  Ms. Turner testified that the DSS pursues civil collection remedies when a person receives an overpayment due to an inadvertent error, such as a failure to update information within the requisite time period.  On the other hand, the DSS pursues criminal prosecution when a person affirmatively misrepresents the facts that establish eligibility.  The DSS contends that Ms. Hart repeatedly misrepresented her situation, and

it chose to criminally prosecute her.  Accordingly, the court finds that the criminal prosecution is not solely for the purpose of collecting a debt.

Based on the foregoing, the court concludes that there has been no violation of the automatic stay or discharge injunction, and the court will not enjoin the prosecution.  The court expresses no opinion on the merits of the criminal prosecution.

A separate judgment will be entered.

**DATED:  August 29, 2005**

A. Thomas Small
United States Bankruptcy Judge